IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOHN DALTON MCDANIEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-00094-P-BP |
| | § | |
| ANDREW M. SAUL, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff John Dalton McDaniel ("McDaniel") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Mark T. Pittman **AFFIRM** the Commissioner's decision.

**I.     STATEMENT OF THE CASE**

McDaniel was born on September 14, 1956 and has a college education. *See* Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 12-1 at 25, 42. He applied for DIB on June 21, 2016, alleging that his disability began on February 1, 2016. Tr. 15. When he applied, he was fifty-nine years old, which is defined as an individual closely approaching retirement age. Tr. 25. The Commissioner denied his claim initially on September 14, 2017, and upon reconsideration on December 13, 2017. Tr. 15. McDaniel requested a hearing, which was held before Administrative Law Judge ("ALJ") Mark J. Mendola on November 28, 2018 in Dallas, Texas, with McDaniel and

his attorney present. Tr. 15. The ALJ issued his unfavorable decision on March 8, 2019, finding that McDaniel was not disabled. Tr. 26.

Specifically, the ALJ employed the statutory five-step analysis and established during step one that McDaniel had not engaged in substantial gainful activity since February 1, 2016, the alleged disability onset date. Tr. 17. At step two, he determined that McDaniel had the severe impairments of type II diabetes mellitus with neuropathy, rheumatoid arthritis, obesity, chronic venous insufficiency/deep vein thrombosis ("DVT"), and a neurocognitive disorder. *Id.* He found that McDaniel had moderate limitations in two "paragraph B" categories: understanding, remembering, or applying information; and concentrating, persisting, or maintaining pace. Tr. 18-19. He also found that McDaniel had a mild limitation in adapting or managing oneself and no limitations concerning interacting with others. Tr. 19. At step three, the ALJ found that McDaniel's impairments did not meet or medically equal two of the "marked" impairments or one "extreme" limitation listed in 20 C.F.R. Pt. 404(p). Tr. 19. In particular, he concluded that McDaniel retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with excepted limitations of avoiding hazards, such as unprotected heights and dangerous moving machinery, as well as no complex tasks. Tr. 20. At step four, the ALJ determined that McDaniel was unable to perform any past relevant work as an account manager. Tr. 24. At step five, the ALJ determined that there were a significant number of jobs in the national economy that McDaniel could perform, such as a data entry clerk, so a finding of "not disabled" was appropriate. Tr. 25.

The Appeals Council denied review on December 6, 2019. Tr. 6. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review.

*Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.    STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's RFC, which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197–98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III. ANALYSIS

McDaniel raises one issue on appeal. He claims that the ALJ failed to fully consider all of his vocationally significant impairments in determining his RFC. ECF No. 14 at 8.

Specifically, he alleges that despite the ALJ finding that he had chronic DVT and a neurocognitive disorder which creates "more than minimal limitations" upon McDaniel's ability to work, the ALJ did not include these limitations in the RFC determination. *Id.* For example, due to his chronic DVT, McDaniel claims he must take frequent breaks to stretch and elevate his legs and feet for at least ten minutes per hour, as well as fully recline to have the most relief from elevating his legs. *Id.* He contends that the RFC did not incorporate this "medically accepted measure" for controlling his leg pain and swelling. *Id.* at 9. McDaniel also claims that the ALJ did not include any limitations in his RFC determination based on his short-term memory impairment. *Id.* at 10. He alleges that the ALJ acknowledged that he has a type of neurocognitive disorder that would "more than minimally" interfere with his ability to work, but did not pose any functional limitations to the VE nor include it in his RFC determination. *Id.*

In response, the Commissioner argues that the record does not support McDaniel's complaints of needing to elevate his legs for at least ten minutes each hour as he did not provide any medical evidence to support his claimed limitation. ECF No. 15 at 4. The Commissioner contends that since McDaniel's treating physician did not make this suggestion in his treatment notes and instead based his findings "solely on McDaniel's subjective allegations," that McDaniel's impairments are not as limiting as he asserts. *Id.* Additionally, the Commissioner responds that the ALJ accounted for McDaniel's complaints of short-term memory impairments as he found that he could understand, remember, and carry out detailed, but not complex tasks after reviewing the medical evidence and considering McDaniel's subjective complaints.

By definition, a claimant's RFC is the most the claimant can still do despite his impairments and any related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2020). "The responsibility for determining a claimant's RFC lies with the ALJ . . . [and] the ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence." *Ewing v. Colvin*, No. 4:13-CV-085-A, 2014 WL 2464765, at *4 (N.D. Tex. June 2, 2014) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990); SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). "The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Id.* (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). Nor must the ALJ expressly state in the RFC the limitations on which it is based. *Cornejo v. Colvin*, No. EP-11-CV-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422–23 (5th Cir. 2008) (per curiam)). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The functions in paragraphs (b), (c), and (d) relate to physical, mental, and other abilities. The ALJ considers the nature and extent of the claimant's physical, mental, and other relevant limitations. 20 C.F.R. § 404.1545.

In determining physical limitations, the ALJ considers evidence of the claimant's abilities to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *Id.* § 404.1545(b). In determining mental limitations, the ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and work pressures in a work setting. *Id.* § 404.1545(c). The ALJ uses the "paragraph B criteria" to rate the degree of the claimant's mental limitations in understanding, remembering,

or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a; *see id.* Part 404, Subpart P, Appendix 1. Finally, the ALJ considers limitations and restrictions that affect other work-related abilities. 20 C.F.R. § 404.1545(d).

When the claimant alleges subjective complaints of pain, objective evidence must corroborate these allegations. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). Pursuant to SSR 96-7p, an ALJ assessing a claimant's allegations of symptoms such as pain or fatigue must conduct an objective-subjective, two-step analysis. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008). In the first, objective, step, the ALJ must determine whether there is an impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* If the ALJ identifies an impairment at step one, then the ALJ proceeds to the second, subjective, step and "considers the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the applicant's ability to do basic work." *Id.* at 459. This requires a credibility finding regarding the applicant's claims about symptoms. *Id.* Further, "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa*, 895 F.2d at 1024. As will be shown below, the ALJ properly considered all of McDaniel's functional limitations.

    A.    <u>The ALJ properly considered McDaniel's alleged need to elevate his legs</u>.

First, McDaniel alleges that the ALJ did not consider his need to elevate his legs in reaching his RFC determination. He asserts that in order to control his edema, he is required to elevate his

7

legs approximately ten minutes per hour, preferably while completely fully reclined. ECF No. 14 at 8. McDaniel notes that his treating physician made a written statement that he needed to take frequent breaks to elevate his legs, and while the ALJ acknowledged this statement, he decided to ignore it since it was not in the physician's treatment notes. ECF No. 16 at 2-3. Despite the statement not being in his treatment notes, McDaniel asserts that treatment notes are not made to establish a record for Social Security purposes, but instead are there to help the treating physician. *Id.* at 3. Therefore, McDaniel argues that the RFC determination is deficient for failing to include this limitation.

The Commissioner responds that McDaniel was unable to show that he was "so functionally impaired that he was precluded from engaging in any substantial gainful activity" that he required greater restrictions such as elevating his legs every hour. ECF No. 15 at 4. In support, the Commissioner argues that McDaniel's treating physician did not suggest in his treatment notes that McDaniel needs to elevate his legs every hour. The Commissioner contends that McDaniel's treating physician wrote the letter with this suggestion solely based on McDaniel's "subjective allegations." *Id.* The Commissioner concludes as a result that McDaniel does not require additional limitations for his edema. *Id.*

While McDaniel testified to the level of pain and limitations on activities that his leg pain and swelling caused, he did not support his evidence of subjective complaints with objective medical evidence in the record that demonstrates that his chronic pain limits his ability to perform work. The ALJ identified the proper legal standards, stated the parameters of the objective-subjective, two-step analysis he was required to undertake, and proceeded in compliance with the proper legal standards. Tr. 17-26. After considering the evidence, the ALJ determined that McDaniel's medically determinable impairments could reasonably be expected to cause some of

the alleged symptoms at step one. Tr. 21. However, he found that McDaniel's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible. *Id.* To support this determination, the ALJ considered McDaniel's complaints of pain from his DVT and severe varicose veins, but ultimately concluded McDaniel's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible. Tr. 21-24. Nevertheless, the ALJ still considered McDaniel's unsupported allegations of pain and the resulting limitations from his leg swelling and pain in determining that he retained the ability to perform sedentary work with minor limitations including avoiding hazards, such as unprotected heights and dangerous moving machinery. Tr. 19.

Substantial evidence in the record supports the ALJ's determination that McDaniel could perform sedentary work on a sustained basis. The ALJ evaluated McDaniel's leg pain and swelling and determined that the medical evidence provided, did not support McDaniel's claims regarding their intensity, persistence, and limiting effects. Tr. 21. He found that McDaniel's last episode caused by his DVT and pulmonary emboli was in 2016 and has been controlled by medication since. *Id.* Additionally, during the alleged period of disability, medical records described McDaniel as "asymptomatic," "doing well with minimal musculoskeletal pain," and with no true swelling of the joints. *Id.* The ALJ noted McDaniel's documented history of having varicose veins and edema, which warranted a limitation of a sedentary level of work. Tr. 23. However, the ALJ found that McDaniel's various treating physicians from 2016 to 2018 indicated that he had a normal physical examination and a good range of motion in all of his joints without tenderness. Tr. 21-23. Furthermore, the ALJ noted that McDaniel was capable of working out with his wife and travelling abroad, and he denied having problems with his daily activities. Tr. 19. Therefore, the ALJ found

that the medical evidence did not support McDaniel's allegation that he needs to elevate his legs to waist level.

McDaniel has not shown that the ALJ's RFC finding is not based on credible evidentiary choices or medical findings. Instead, he argues that other evidence in the record supports his assertion that he is not capable of the demands of sedentary work as he has to elevate his legs for at least ten minutes every hour. *See* ECF No. 14 at 8-11. McDaniel's "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Caldwell v. Colvin*, No. 4:15-CV-00576-O-BL, 2016 WL 3621097, at *3 (N.D. Tex. June 10, 2016), *rec. adopted,* No. 4:15-CV-00576-O, 2016 WL 3523780 (N.D. Tex. June 28, 2016). McDaniel's disagreement with the ALJ's RFC finding does not carry his burden of establishing that no substantial evidence supports the ALJ's determination. As a result, reversal of the ALJ's decision is not required on this point.

  B. <u>The ALJ Considered McDaniel's Claims of Short-Term Memory Impairment.</u>

McDaniel also alleges that the ALJ did not correctly consider his short-term memory impairment in determining his RFC. He asserts that the ALJ erred by not including any limitations in the RFC based on his neurocognitive disorder, though the ALJ recognized that it caused more than a minimal effect on McDaniel's ability to work. ECF No. 14 at 12. McDaniel states the results of the Weschler Adult Intelligence Scales, Fourth Edition ("WAIS-IV"), administered by Dr. Greer, prove that his short-term memory was a distinctive weakness. He further contends that substantial evidence does not support the ALJ's RFC determination because the ALJ did not have the VE consider the effect that McDaniel's short-term memory would have on his ability to work as a data entry clerk. *Id.* at 13-14.

The Commissioner responds that the ALJ accounted for these limitations in finding that McDaniel could understand, remember, and carry out detailed, but not complex tasks. ECF No. 15 at 5. The Commissioner asserts that the ALJ based these limitations on the assessment of Dr. Greer and the State disability determination service doctors ("DDS consultant"). *Id.* The Commissioner also contends that McDaniel did not need greater limitations as Dr. Greer did not address any specific limitations that McDaniel would need in order to be able to perform in work-related activities. *Id.* at 4. Furthermore, the Commissioner asserts that Dr. Greer determined that McDaniel only had a "mild neurocognitive disorder" and that "psychological decompensation is certainly not evident, nor is there a compelling history of documented cognitive deterioration." *Id.* at 4-5.

The record reflects that the ALJ considered McDaniel's short-term memory impairment under the "paragraph B" criteria. Tr. 18-20. The ALJ found that McDaniel has a moderate limitation in understanding, remembering, or applying information. Tr. 18. In determining this limitation, the ALJ noted McDaniel's complaints of cognitive limitations and the psychiatric consultative examination, which indicated that he had some potential decline, but his examination revealed generally satisfactory functioning. *Id.* The ALJ further considered Dr. Greer's notes reflecting that McDaniel arrived at his appointment on time, had driven himself to the appointment, and scored only slightly below the level of a college graduate and a certified public accountant on his IQ test. Tr. 19. The ALJ also considered Dr. Greer's finding that McDaniel had no evident psychological decompensation nor a history of cognitive deterioration. *Id.* Dr. Greer's findings as well as the DDS medical consultant's findings that McDaniel had moderate limitations in understanding, remembering, and applying information supported the ALJ's conclusion that McDaniel has a moderate limitation due to his short-term memory impairment. *Id.*

The ALJ also determined that McDaniel has a moderate limitation with regard to concentrating, persisting, or maintaining pace due to his short-term memory impairment. *Id.* The ALJ made this determination based on the report from McDaniel's psychiatric consultative examination, the examination of his treating physician, Dr. Zarosky, and the DDS medical consultant's findings. *Id.* The psychiatric consultative examination revealed that McDaniel managed his own finances and watched a lot of old movies during the day, both of which required an ability to maintain concentration, persistence, and pace. *Id.* Dr. Zarosky determined in his October 31, 2018 examination that McDaniel had a normal mental status examination, normal behavior, and normal judgment and thought content. *Id.* The DDS medical consultant, however, found that he had moderate limitations in concentrating, persisting, or maintaining pace. *Id.*

Next, the ALJ considered McDaniel's short-term memory impairment and its effect on his ability to adapt or manage himself. *Id.* The ALJ found the DDS medical consultant's determination that McDaniel only had mild limitations in adapting and managing persuasive since the medical record indicates that he works out with his wife, has been physically active, travelled to Scotland, shares responsibility for household chores, and denied any problems with activities of daily living. *Id.*

However, despite the inconsistencies in the medical record compared to McDaniel's claims of short-term memory impairments, the ALJ considered McDaniel's testimony, such as having trouble keeping up as an account manager and performing different roles. Consequently, the ALJ limited his conclusion regarding McDaniel's RFC to simple tasks. Tr. 20.

As noted previously, McDaniel's disagreement with the ALJ's RFC finding and reference to conflicting evidence do not carry his burden of establishing that no substantial evidence supports the ALJ's determination. "The record indicates that the ALJ used the medical information provided

by [McDaniel] to determine his residual functional capacity for work[; u]nder the regulations and [Fifth Circuit] case law, the determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). Because substantial evidence in the record supports the ALJ's RFC determination, he did not err as to this issue.

## II.   CONCLUSION

Because the ALJ employed the correct legal standards, substantial evidence in the record supports his decision, and McDaniel has not shown that reversal of the decision is required, the undersigned **RECOMMENDS** that Judge Pittman **AFFIRM** the Commissioner's decision.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** October 23, 2020.

*[signature: Hal R. Ray, Jr.]*
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE